IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN GACH,<br><br>Petitioner,<br><br>vs.<br><br>MARKWAYNE MULLIN, Secretary, Department of Homeland Security; TODD BLANCHE, Acting Attorney General; DAVID VENTURELLA, Acting Director of Immigration and Customs Enforcement (ICE); DAVID EASTERWOOD, St. Paul ICE Field Office Director; and JEROME KRAMER, Lincoln County Sheriff;<br><br>Respondents. | **4:26CV3238**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on John Gach's Petition for Writ of Habeas Corpus. Filing No. 1. For the reasons set forth herein, the Court grants the Petition in part and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner is a native of Sudan and a citizen of the country now known as South Sudan. Filing No. 6 at 3. He entered the United States as a refugee on September 8, 1995. Following a conviction for assault, Petitioner was placed in removal proceedings in 2004. Filing No. 6-1. He filed for asylum. Filing No. 6 at 4. On April 25, 2006, an immigration judge denied Petitioner's asylum application, ordered him removed from the United States, but granted him withholding of removal to Sudan, meaning he could be removed from the United States but could not be deported to Sudan. Filing No. 6-5. On April 27, Petitioner was released on an order of supervision requiring him to periodically report to Respondents and to assist in obtaining travel documents to effectuate his

removal. Filing No. 6-6 at 1. Petitioner was released on the Order of Supervision for more than twenty years.

On June 23, 2026, Respondents issued a Notice of Revocation of Release. Filing No. 6-7. The notice states Petitioner's release was being revoked because "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal" in that "ICE has obtained a travel document [for South Sudan] and scheduled your removal to take place no later than: 9/03/2026." Filing No. 6-7 at 1. The notice is electronically signed by Adam R. Autio, "Assistant Field Office Director." *Id.* at 2. The Notice of Revocation of Release was served on Petitioner on July 15, 2026, the same day Petitioner was arrested pursuant to a warrant and advised in writing that Respondents intended to effectuate his deportation to South Sudan. Filing No. 6 at 5; Filing No. 6-7 at 2 (proof of service date); Filing No. 6-8 (warrant of arrest); Filing No. 6-9 at 1 (notice of removal to South Sudan).

On August 6, 2026, Petitioner requested a credible fear interview with an asylum officer. Filing No. 6 at 5. On August 18, 2026, Petitioner underwent a third-country fear interview with USCIS, expressing a fear of being removed to South Sudan. Filing No. 12 at 2. USCIS issued a negative fear determination, received by Petitioner on August 20, 2026, finding Petitioner has not established it is more likely than not that he will be persecuted or tortured in South Sudan. Filing No. 12-1 at 1. In his reply brief filed the same day his counsel received the credible fear determination, Petitioner indicated he intends to seek review of this determination by an immigration judge. Filing No. 9.

Petitioner has filed a Petition for Writ of Habeas Corpus. He seeks an order requiring his immediate release and return to supervision and an order enjoining

Respondents from removing him to South Sudan unless and until an immigration judge concurs in USCIS's negative third-country fear determination. Filing No. 1 at 21.

## II. STANDARD OF REVIEW

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. ANALYSIS

Petitioner sets forth three bases for the relief he seeks: 1) his detention violates due process because his removal is not reasonably foreseeable; 2) his detention violates due process because ICE did not follow the regulations for revocation of an order of supervision; and 3) third-country removal prior to review by the immigration judge violates due process. The Court addresses these arguments in turn.

### A. Foreseeability of Removal

Petitioner first argues that his detention violates due process because his removal is not reasonably foreseeable. The Court concludes there has been no due process violation based on the length of Petitioner's detention or the likelihood of his removal.

Once an alien has been ordered removed, he or she is subject to mandatory detention during the initial ninety-day removal period. 8 U.S.C. § 1231(a)(6). If the alien is not removed after this ninety-day removal period, release is not automatic. Rather, the United States is able to determine if further detention is warranted or if the individual

should be released under supervision. 8 C.F.R. § 241.4(i). However, the Supreme Court has determined that an alien may not be detained indefinitely beyond the removal period. Examining the legislative history, the Court found congressional intent that detention of less than six months is generally acceptable. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Beyond this six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, Petitioner has been detained for less than three months. Thus, his detention is presumptively reasonable under *Zadvydas*. Petitioner cites to cases in which courts have nevertheless undertaken review of detention within the six-month period. *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395 (D.N.J. 2025) ("Although the Supreme Court established a six-month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention before such time."). Petitioner urges the Court to find his removal not reasonably foreseeable despite the short length of his present detention because "the government has not been able to deport him to Sudan or South Sudan for twenty years" and his grant of withholding of removal to Sudan should encompass South Sudan because South Sudan did not exist at the time of his grant of withholding. Filing No. 1 at 10.

As to the first argument, while Respondents have not effected Petitioner's deportation to date, they represent that they have now obtained a travel document for South Sudan. Given ICE's recent acquisition of travel documents, Petitioner has not met his burden of demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *cf. Jaiteh*

*v. Gonzales*, No. CIV. 07-1727 PJS/JJG, 2008 WL 2097592, at *3 (D. Minn. Apr. 28, 2008), *report and recommendation adopted*, No. CIV. 07-1727PJSJJG, 2008 WL 2074163 (D. Minn. May 14, 2008) ("If travel documents are pending before a foreign government, and a consular official suggests that the documents are forthcoming, this Court cannot find *no* significant likelihood of removal." (Emphasis in original)).

To the extent Petitioner argues that he should be granted withholding of removal to South Sudan in addition to Sudan, the Court is without jurisdiction to decide this issue. The interpretation of Petitioner's withholding of removal is not within this Court's narrow habeas-corpus jurisdiction under 28 U.S.C. § 2241. Review of the initial removal and withholding of removal determination was reviewable under 8 U.S.C. § 1252 (providing for judicial review of removal orders) which generally provides for appeal of an immigration judge's decision to the Board of Immigration Appeals, followed by the filing of a petition in the federal court of appeals. Review of the August 18, 2026, negative credible-fear determination by the asylum officer is reviewable by the immigration court as explained in greater detail below, but "[n]o appeal shall lie from the immigration judge's decision." 8 C.F.R. § 1208.31(g)(1). So, this Court lacks jurisdiction over the substance of the withholding of removal decision(s), whether framed as an interpretation of the initial withholding decision or a new credible-fear determination. Therefore, the Court cannot find a due process violation based on either the lack of foreseeability of Petitioner's removal or the interpretation of the terms of the grant of withholding.

**B. Process for Revocation of Supervision**

Petitioner next contends that his detention violates due process because ICE did not follow the required procedures for revocation of supervision. Respondents contend

that any violation was "technical non-compliance" and does not warrant habeas-corpus relief. Filing No. 4 at 10. The Court finds Respondents' violations require that Petitioner be re-released on the terms of his previously ordered supervision.

As set forth above, aliens ordered removed are subject to an initial period of mandatory detention. 8 U.S.C. § 1231(a)(2)(A). Beyond this ninety-day period of mandatory detention, aliens ordered removed can be released subject to terms of supervision. 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(a).

However, release on supervision may be revoked. Regulations promulgated pursuant to the INA provide that supervision may be revoked when an alien violates the conditions of release or when, inter alia, "[i]t is appropriate to enforce a removal order." 8 C.F.R. § 241.4(l)(2(iii). However, the discretion to revoke an order of supervision is limited to certain officials, namely the "Executive Associate Commissioner," or a "district director" when "in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). Although the regulatory terminology utilizes the titles of the now-defunct INS, Courts have recognized that the Homeland Security Act reassigned these duties to the Executive Associate Director of ICE and district director of ICE, respectively. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) ("Thus, the Executive Associate Commissioner [of] INS is equivalent to the Executive Associate Director [of] ICE.").

The regulations also require a review and/or interview with the detainee subsequent to his or her detention. Specifically, if an alien's supervision is revoked due to an alleged violation of the conditions of release, he or she must be afforded an "initial

informal interview promptly after his or her return to . . . custody" to respond to the reasons for the revocation. 8 C.F.R. § 241.4(l)(1). Where an alien's supervision is revoked for another reason (such as ICE's desire to enforce the removal order), the alien is still entitled to a "review process" which "will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3). "That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.4(l)(3).

Here, Respondents failed to comply with both the requirement for an appropriate official to revoke Petitioner's supervision and the requirement for a review and interview subsequent to detention. The Notice of Revocation of Release was signed by Adam R. Autio, "Assistant Field Office Director." Respondents advance no argument that Autio should be considered an Executive Associate Director of ICE or a district director of ICE. Accordingly, Respondents violated the regulations by failing to revoke Petitioner's supervision pursuant to a determination by an authorized official. *Accord Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) ("[T]he revocation of Santamaria Orellana's release also violated the requirement that such a decision must be made either by an 'Executive Associate Commissioner' or by a 'district director' . . . ."); *Ceesay*, 781 F. Supp. 3d at 162 ("[T]his Court cannot conclude that Robinson had the authority to revoke release, finds that Ceesay's release was not lawfully revoked, and holds that he is entitled to release on that basis alone.").

Respondents also failed to provide Petitioner with a review and interview subsequent to his detention. The revocation of Petitioner's release appears to be premised not on his violation of the terms of his release, but on ICE's intention to now effectuate the removal order. Accordingly, Petitioner is not entitled to a "prompt informal interview" as he argues under 8 C.F.R. § 241.4(l)(1). However, Petitioner must be afforded a "review" and an interview "within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3). Although three months have not yet passed from the date of revocation, Respondents have made it clear they intend to remove Petitioner without the required review and interview process by setting a removal date of September 3, 2026. It also appears Respondents have failed to conduct any form of a review process wherein Petitioner can contest any disputed facts. ICE's actions fail to comply with the required procedures for revocation of supervision. *Accord* *Santamaria Orellana*, No. 2025 WL 2444087, at *7 (finding a violation of 8 C.F.R. § 241.4(l) where Petitioner was not afforded an interview after return to custody). Because Petitioner's release was revoked in violation of the regulatory procedures, his detention is unlawful.

**C. Necessity of Immigration Judge Review of the Negative Third-Party Credible Fear Determination**

Lastly, Petitioner argues that removal to a third country for which he expresses a fear of removal (South Sudan) would violate his due process rights if such removal occurs prior to an immigration judge having the opportunity to review USCIS's no-credible-fear determination. Respondents argue immigration-judge review is not available.

The Court finds immigration-judge review of a negative credible fear finding is mandatory once the individual requests it. "[T]he Attorney General may not remove an

alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The corresponding regulations state that if an alien subject to removal "expresses a fear of returning to the country of removal," USCIS (via an asylum officer) shall initially assess the request. 8 C.F.R. § 1208.31(a) & (e). "The asylum officer's negative decision regarding reasonable fear *shall* be subject to de novo review by an immigration judge upon the alien's request." 8 C.F.R. § 1208.31(g) (emphasis added). Therefore, once the request is made, review by an immigration judge is required.

To the extent Respondents represent they intend to deport Petitioner prior to an immigration judge's review of the asylum officer's credible fear determination, they would be in violation of the law. The *Accardi* doctrine, established in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), "bars administrative agencies from taking action 'inconsistent with their internal regulations when it would affect individual rights'" *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) (citation omitted), upon a showing of prejudice, *American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970).

Accordingly, Respondents are ordered not to re-detain Petitioner if such detention is an attempt to avoid an immigration judge's review of the asylum officer's negative credible fear finding by prematurely removing Petitioner.

IT IS ORDERED:

1. Petitioner's Petition for Writ of Habeas Corpus, Filing No. 1, is granted in part as stated herein.

2. Respondents shall release Petitioner from custody as soon as is practicable, no later than 48 hours from the date of this Order, on the same terms as the previous supervision order.
3. Respondents must release Petitioner with all personal effects including identification documents and immigration documents.
4. Respondents shall provide the Court with a status update concerning Petitioner's release by no later than **5:00 P.M. on September 2, 2026.**
5. Should Respondents seek to re-detain Petitioner pursuant to a new notice of revocation of supervision, they must comply with all pertinent regulatory provisions, including having an authorized officer make the decision to revoke and providing Petitioner the required review and interview. Respondents shall not re-detain Petitioner with the intent to prematurely deport him prior to an immigration judge reviewing the asylum officer's credible fear determination.

Dated this 27th day of August, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge